# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**CAROL A. WILSON, Administrator,** *et al.*,

        **Plaintiffs,**

v.

**FIORITTO CONSTRUCTION, LLC,**

        **Defendant.**

Case No. 2:17-cv-317
**JUDGE GEORGE C. SMITH**
Magistrate Judge Deavers

## OPINION AND ORDER

This matter is before the Court upon the Motion for Summary Judgment of Plaintiffs Carol A. Wilson, Administrator, and Trustees of the Ohio Operating Engineers Health and Welfare Plan, the Ohio Operating Engineers Pension Fund, the Ohio Operating Engineers Education and Training Fund, and the Ohio Operating Engineers Apprenticeship Fund ("Plaintiffs' Motion for Summary Judgment") (Doc. 13). The Motion is fully briefed and ripe for disposition. For the following reasons, Plaintiffs' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Plaintiffs are the Administrator and Trustees of the Ohio Operating Engineers Health and Welfare Plan, the Ohio Operating Engineers Pension Fund, the Ohio Operating Engineers Education and Safety Fund, and the Ohio Operating Engineers Apprenticeship Fund (the "Funds"). The Funds are jointly administered, multiemployer fringe benefit programs established for the benefit of employees of contractors who perform work pursuant to the "Ohio

Highway Heavy Agreement Effective May 1, 2010 through April 30, 2013" between the International Union of Operating Engineers, Local 18 and its Branches (AFL-CIO) (the "Union") and the Labor Relations Division of the Ohio Contractors Association (Doc. 13-1, Collective Bargaining Agreement ("CBA")). The Funds provide health and welfare, retirement, and other fringe benefits to their beneficiaries. (Doc. 1, Compl. ¶¶ 2–3).

Defendant Fioritto Construction, LLC is in the business of heavy highway construction and typically has four to five employees. (Doc. 14-7, Fioritto Dep. at 9). Shortly after it was formed in 2011, Fioritto Construction entered into a one-page "AGREEMENT — Highway Heavy Construction" with the Union (Doc. 1, PAGEID #12) on March 14, 2011, whereby Fioritto Construction agreed to adopt all terms of the CBA.

The CBA covers work done by operating engineers, primarily the operation of various types of construction equipment, such as backhoes and "Bobcat-type and/or SkidSteer Loaders." (*Id.* Art. II, ¶ 4, Ex. A, Schedule 1). Employers are also required by the CBA to employ Union members to carry out work covered by the CBA. (*Id.*, Art. II ¶ 4). Further, the CBA requires employers to make contributions to the Funds. Pertinent to this Motion are the following provisions:

- "[A]ny person, firm or corporation who as an Employer becomes signatory to this Agreement . . . shall be bound to make Health and Welfare payments, Pension payments, Apprenticeship Fund and Safety and Educational Fund payments required under Article V for all work performed within the work jurisdiction outlined in Article I of this Agreement." (Doc. 13-1, CBA Art. II, ¶ 3).

- "Fringe benefit contributions shall be paid . . . for all hours paid to each employee by the Employer under this Agreement." (Doc. 13-1, CBA Art. V, ¶ 35).

As provided by the CBA, the Funds conducted an audit of Fioritto Construction's payroll records in November 2016 for the period of July 1, 2015 to November 1, 2016. (Doc. 13-1,

Polsinelli Aff. ¶ 6). The audit disclosed that Fioritto Construction had not made fringe benefit payments during the audit period for work done by Thomas Fioritto (the sole owner of Fioritto Construction), Tom Yelling, and Mario Finelli. (Doc. 14-7, Fioritto Dep. at 22–23). The Funds sent a deficiency letter to Fioritto Construction dated January 5, 2017 outlining the amount of delinquent contributions owing for each of these three individuals. (*Id.*; Doc. 13-2, PAGEID #158–64).

Fioritto Construction agreed that contributions were owed for Mr. Finelli, but not for Mr. Fioritto or Mr. Yelling. Accordingly, on January 12, 2017, Fioritto Construction sent a check to the Funds for $963.35, which represented the amount owed for Mr. Finelli in the form of fringe benefit contributions, Union dues, and late fees. (Doc. 14-1, Letter and Check).

At deposition, Thomas Fioritto (in his capacity as corporate representative under Federal Rule of Civil Procedure 30(b)(6)) admitted that he performed work for Fioritto Construction by operating equipment, specifically, a backhoe and a skid steer (which Mr. Fioritto described as the generic name for a Bobcat type of vehicle). (Doc. 14-7, Fioritto Dep. at 11–12). Mr. Fioritto testified that Mr. Yelling also operates the skid steer. (*Id.* at 12–13). Despite his operation of equipment listed in the CBA, Mr. Fioritto asserted that Fioritto Construction was not responsible for fringe benefit payments for himself because he had asked to join the Union multiple times and was refused. (*Id.* at 30–31).

As for Mr. Yelling, Mr. Fioritto testified that no fringe benefit contributions were owed to the Funds on his behalf because he was classified as a "laborer" as opposed to an operating engineer, and because Fioritto Construction made payments on Mr. Yelling's behalf to a different set of fringe benefit funds under a collective bargaining agreement with the laborers'

union.  (*Id.* at 18).  Mr. Fioritto had also been informed by the laborers' union that it had jurisdiction over the skid steer.  (*Id.* at 30).

Plaintiffs commenced this action under 29 U.S.C. §§ 1145 and 1132 on April 14, 2017.  (Doc. 1, Compl.)  Plaintiffs seek to recover the amount of unpaid delinquent fringe benefit contributions owing for each of Mr. Finelli, Mr. Yelling, and Mr. Fioritto "in the amount of $17,034.04, plus accumulated interest charges in the amount of $3,968.26 calculated through November 30, 2017, plus late charges of $8.40 per day thereafter and statutory interest in the amount of $3,968.26 calculated through November 30, 2017, plus late charges of $8.40 per day thereafter as long as the judgment remains unpaid," in addition to attorney's fees and costs.  (Doc. 13, Mot. at 9).  Plaintiffs now move for summary judgment on all of their claims (other than attorney's fees and costs, which Plaintiffs indicate they will seek in a post-judgment motion).

## II.    SUMMARY JUDGMENT STANDARD

Plaintiffs move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012).  The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment.  *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). But self-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, J.). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson,* 477 U.S. at 251.

### III. DISCUSSION

Plaintiffs seek to recover several categories of damages: delinquent fringe benefit contributions, interest, and liquidated damages. The Court will address each of these categories in turn.

### A. Fringe benefit contributions

The Employee Retirement Income Security Act ("ERISA") creates a cause of action for plan fiduciaries to recover contributions owed under a collective bargaining agreement. 29 U.S.C. §§ 1145, 1132(a)(3). When a union establishes a multi-employer fringe benefit trust fund, and when the union enters into a collective bargaining agreement with an employer that requires contributions to that trust fund, the fund becomes a third-party beneficiary of the collective bargaining agreement and is entitled to rely on its literal terms. *Bd. of Trustees of the Plumbers, Pipe Fitters & Mech. Equip. Serv., Local Union No. 392 Pension Fund v. B & B Mech. Servs., Inc.*, 813 F.3d 603, 609 (6th Cir. 2015).

Here, there is no dispute that Fioritto Construction was party to the CBA during the audit period of July 1, 2015 to November 1, 2016. Fioritto Construction also does not dispute that fringe benefit contributions were properly assessed by the Funds for at least some of its employees. The dispute concerns whether delinquent contributions were properly assessed during the audit period against three specific employees: Mario Finelli, Tom Yelling, and Thomas Fioritto.

#### 1. Mario Finelli

Fioritto Construction admits that fringe benefit contributions on behalf of Mario Finelli were owed to the Funds during the audit period and were not paid prior to the audit. However, Fioritto Construction has already made a payment to the Funds in the amount of $963.35 purporting to satisfy all outstanding benefit contributions, union dues, and interest on behalf of Mr. Finelli. (Doc. 14-1, Letter and Check). Therefore, according to Fioritto Construction, it has no outstanding liability with regard to Mr. Finelli.

Plaintiffs do not dispute that the $963.35 payment was made or that the amount was accurate as to Mr. Finelli. However, in their reply brief, Plaintiffs state that

> When contributions are paid following an audit, it is the Funds' practice to credit those contributions toward the oldest outstanding balance. The judgment amount sought through the Funds' motion has been updated from the time the Complaint was filed to reflect all payments made by Defendant and the additional interest and late charges that have accrued in the interim. The Court should grant summary judgment in favor of the Funds in the amounts sought in their motion.

(Doc. 15, Reply at 5). This is the sum total of Plaintiffs' argument and evidence regarding liability with respect to Mr. Finelli. Plaintiffs seem to be implying that Fioritto Construction had other outstanding contributions related to other employees (presumably, Mr. Yelling and Mr. Fioritto) that were incurred prior to those of Mr. Finelli, and that the $963.35 payment was credited (at least in part) toward those outstanding contributions instead of Mr. Finelli's. But Plaintiffs do not actually state as much. Nor do they offer any admissible evidence that crediting the oldest balance was in fact their standard practice, or that it was followed in the case of Mr. Finelli. In sum, they have offered no evidence to dispute Fioritto Construction's evidence that Mr. Finelli's outstanding contributions and interest have already been paid. As the Court must view disputed facts in the light most favorable to the non-movant, Plaintiffs are not entitled at this time to summary judgment as to contributions owed on behalf of Mr. Finelli. However, the Court may revisit this determination upon submission of additional evidence as outlined below.

### 2. Tom Yelling

Fioritto Construction admits that Mr. Yelling operates skid steer equipment as part of his employment. (Doc. 14-7, Fioritto Dep. at 12–13). The CBA specifically covers work involving the operation of "Bobcat-type and/or SkidSteer Loaders". (Doc. 13-1, CBA, Ex. A, Schedule 1). Thus, Mr. Yelling performed work covered by the CBA during the audit period and fringe benefit contributions were owed on his behalf during that period.

Fioritto Construction argues that it should not have to pay fringe benefit contributions to the Funds on Mr. Yelling's behalf because he is classified by Fioritto Construction as a laborer,

7

and Fioritto Construction makes fringe benefit contributions on his behalf to funds established by the laborer's union. Fioritto Construction cites *Orrand v. Hunt Constr. Grp., Inc.* for the proposition that employers should not be required to make fringe benefit payments to multiple unions for the same work. 852 F.3d 592 (6th Cir. 2017). *Hunt*, however, is distinguishable in that the employers in that case availed themselves of a determination by the National Labor Relations Board ("NLRB") as to which union had jurisdiction over skid steer work. After the NLRB decided to award skid steer work to the laborer's union, the *Hunt* court determined that the operating engineers' union's claims to recover fringe benefit contributions were precluded by the NLRB's decision. *Id.* at 597. As no jurisdictional determination has been made by the NLRB as to the work in this case, *Hunt* is not applicable.

Further, standing alone, the fact that an employer is required to "double-pay" a single employee's fringe benefit contributions "would not be sufficient to relieve the employer of its contractual obligation to make contributions to the ERISA funds." *Hunt*, 852 at 595 (quoting *Tr. of B.A.C. Local 32 Ins. Fund v. Ohio Ceiling and Partition Co., Inc.*, 48 F. App'x 188, 196-97 (6th Cir. 2002)). *See also Tr. of Nw. Ohio Plumbers & Pipefitters Pension Plan v. Helm & Assocs.*, No. 3:10 CV 739, 2011 WL 4688784, at *7 (N.D. Ohio Oct. 4, 2011) ("That a CBA requires a double payment is not a valid reason to evade the responsibility" so long as the fringe benefit payments are unambiguously required by the CBA).

As a result, Fioritto Construction is responsible for the fringe benefit contributions on behalf of Mr. Yelling that accrued during the audit period. Plaintiffs are therefore entitled to summary judgment as to Fioritto Construction's liability for these contributions. However, Plaintiffs have not provided the Court with sufficient information to determine the amount of these outstanding contributions. Given the Funds' asserted practice of crediting older obligations

first, and the dispute regarding whether Mr. Finelli's contributions were paid, the Court will require further evidence from Plaintiffs as to the amount of delinquent contributions attributable to Mr. Yelling and as to how any post-audit payments by Fioritto Construction affected that amount.

### 3. Thomas Fioritto

Just as with Mr. Yelling, Fioritto Construction admitted that Mr. Fioritto operated equipment covered by the CBA during the audit period. (Doc. 14-7, Fioritto Dep. at 11–12). Fioritto Construction argues that contributions are nevertheless not required on Mr. Fioritto's behalf because (1) he is not a member of the Union, despite requesting to join a number of times; (2) Fioritto Construction reached an understanding with the Union that Mr. Fioritto could provide work to his company without liability because he was not going to be a member of the Union; and (3) Mr. Fioritto is the sole owner of Fioritto Construction, and therefore cannot be an "employee" under the CBA. All of these arguments lack merit.

First, the exact CBA language at issue here has been held by the Sixth Circuit to cover all employees, not only those who are union members. *Boards of Trustees of Ohio Laborers' Fringe Ben. Programs v. Jenkins*, 283 F. App'x 315, 317–18 (6th Cir. 2008) (holding that CBA providing that "any person, firm, or corporation who becomes a signatory to the agreement shall be bound to make the contributions set forth in the CBA for 'all work performed within the work jurisdiction outlined in Article II of this Agreement'" required fringe benefit contributions for all employees, union and non-union alike). *See also Tr. of B.A.C. Local Ins. Fund v. Fantin Enterprises, Inc.*, 163 F.3d 965 (6th Cir.1998) ("As a matter of law, collective bargaining agreements may require employers to contribute to funds for all employees, not just employees who are members of the union."). Therefore, the fact that Mr. Fioritto is not a Union member is

9

not dispositive of Fioritto Construction's obligation to make fringe benefit contributions on his behalf.

Second, any side agreements reached between Fioritto Construction and the Union are not binding on the Funds:

> Precedent is well-established that ERISA funds are accorded a special status and are entitled to enforce the written contracts, without regard to the understandings or common law contract defenses of the original parties . . . . Once an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the Funds' ability to enforce the agreement. Any conduct of the Union that is contrary to the written provisions of the agreements cannot affect the Funds' right to collect contributions.

*Operating Engineers Local 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1053 (6th Cir. 2015) (citations omitted). Fioritto Construction therefore cannot avoid liability for fringe benefit contributions on the basis of any side agreement that was not contained in the CBA.

The employer/employee distinction advanced by Fioritto Construction poses a closer question. The CBA defines neither "employer" nor "employee." This District previously examined this very CBA and determined that it did not provide a clear answer as to whether the owner of a company was an "employer" or an "employee" for the purpose of fringe benefit contributions. *Wilson v. A&K Rock Drilling, Inc.*, No. 2:16-CV-739, 2017 WL 2422800, at *4–5 (S.D. Ohio June 5, 2017) (Marbley J.).

However, that same court also recognized that "the Southern District of Ohio has twice required fringe benefit contributions on behalf of the owners of signatory employers where the very same Funds at issue here [i.e., Plaintiffs in the case at bar] sought recovery." *Id.* at *7 (citing *Orrand v. Scassa Asphalt, Inc.*, No. 2:12-cv-1131, 2014 WL 4272722, at *1 (S.D. Ohio Aug. 29, 2014) (requiring delinquent fund contributions on behalf of *all* the company's

employees, including its owner and president, Nick Scassa); *Bunn Enters., Inc. v. Ohio Operating Eng'rs Fringe Benefit Programs*, No. 2:13-cv-357, 2013 WL 3147956, at *7 (S.D. Ohio June 19, 2013) (Marbley, J.) (requiring delinquent contributions for *all* of the company's employees—including its owner, Kevin W. Bunn—for all hours worked)). The *A&K Rock Drilling* court further noted that on both occasions, the Sixth Circuit affirmed. 2017 WL 2422800, at *7 (citing *Scassa Ashpalt*, 794 F.3d 556 (6th Cir. 2015) and *Bunn Enters.*, 606 F. App'x 798 (6th Cir. 2015)). As a result, "even if Klodt truly served as A&K's owner or corporate representative, as the company alleges, he still could qualify as an employee for fringe benefit contribution purposes if, as the Funds allege, he performed some work on A&K's behalf." 2017 WL 2422800, at *7. Accordingly, because Fioritto admittedly performed work covered by the CBA, he qualifies as an employee for fringe benefit contribution purposes.

Plaintiffs are therefore entitled to summary judgment as to Fioritto Construction's liability for fringe benefit contributions attributable to Mr. Fioritto. However, just as with Mr. Yelling, the Court will require further information before it can determine the amount of this liability.

**B.     Interest**

Plaintiffs further seek interest on the delinquent fringe benefit contributions. Such interest is expressly authorized by ERISA, which provides for a mandatory award of interest when, in an action brought to recover unpaid fringe benefit contributions required by a CBA, judgment is granted in favor of the plan. 29 U.S.C. § 1132(g)(2)(B); *Michigan Carpenters Council Health and Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 388 (6th Cir. 1991) (remedies provided by § 1132(g)(2) are mandatory). Interest on unpaid contributions is determined "by using the rate provided under the plan, or, if none, the rate prescribed under

section 6621 of Title 26 [prescribing interest rates for underpayments to the Internal Revenue Service]." 29 U.S.C. § 1132(g).

Plaintiffs assert that the rules and regulations adopted by the Trustees of the Funds specify that late contribution payments will carry interest at 18 percent per annum from the date the delinquencies are discovered. (Doc. 13-1, Polsinelli Aff. ¶ 4). However, Plaintiffs have not submitted these rules and regulations into the record and the CBA does not speak to interest applicable to delinquent fringe benefit contributions. And even if the interest rate were settled, the Court still could not calculate the applicable interest because it depends on resolution of the amount of fringe benefit contributions that remain unpaid.

Accordingly, Plaintiffs are entitled to summary judgment as to liability for interest, but the Court requires further information before it can determine the amount of the interest.

## C. Liquidated damages

Section 1132(g)(2)(C) also provides for a mandatory award of liquidated damages, in addition to unpaid contributions and interest, in an amount equal to the greater of:

> (i) interest on the unpaid contributions, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount [of unpaid fringe benefit contributions].

Just as with the interest rate, Plaintiffs assert that rules and regulations adopted by the Trustees provide that "the Trustees shall be entitled to recover, in addition to the delinquent contributions, statutory interest calculated at the rate of 18 percent per annum on the amount of delinquent contributions." (Doc. 13-1, Polsinelli Aff. ¶ 4). But again, these rules and regulations are not in the record for the Court to confirm this rate. Additionally, it is not clear to the Court whether this authorization for "statutory interest" is equivalent to a provision for "liquidated damages" as referenced in § 1132(g)(2)(C)(ii). Plaintiffs' brief also suggests that the rules and

regulations call for "late charges" as opposed to "statutory interest." (Doc. 13, Mot. at 8) (stating that liquidated damages are "called 'late charges' by Plaintiffs" and "The Funds require all employers to pay late charges, or liquidated damages, for their delinquent contributions at a rate of 18% per year."). These nomenclature distinctions may not ultimately matter; however, the lack of clarity as to the Plans' actual terms prevents the Court at this time from entering judgment in favor of Plaintiffs at the rate they claim is owed. The rules and regulations themselves must be reviewed by the Court before it can determine whether they provide for liquidated damages for the purpose of § 1132(g)(C)(ii).

Accordingly, Plaintiffs are entitled to summary judgment as to liability for liquidated damages, but the Court requires further information before it can determine the amount.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is granted in favor of Plaintiffs as to liability for delinquent fringe benefit contributions, and interest and liquidated damages thereon, owed by Fioritto Construction on behalf of Mr. Fioritto and Mr. Yelling; but summary judgment is denied as to the same on behalf of Mr. Finelli. The Clerk shall remove Document 13 from the Court's pending motions list.

As noted above, the Court requires further information before it can determine the amount of delinquent fringe benefit contributions, interest, and liquidated damages owed by Fioritto Construction. The Court therefore **ORDERS** Plaintiffs to file a supplemental brief, along with supporting admissible evidence, as to:

(1) The Funds' asserted standard practice of crediting post-audit contribution payments toward the oldest outstanding balance;

(2) An accounting of how the January 12, 2017 payment of $963.35 made by Fioritto Construction with respect to outstanding contributions on behalf of Mario Finelli was

13

credited, including, if applicable, identification of other employees' outstanding balances to which the payment was credited, and the dates on which each of the employees' balances were incurred;

(3) The rules and regulations referred to in the affidavit of Samantha Polsinelli (Doc. 13-1) that establish rates for interest and liquidated damages. Plaintiffs shall attach a complete copy of any document on which they rely for specific rates of interest or liquidated damages; and

(4) An accounting or calculation of how Plaintiffs reached the amounts of outstanding contributions, interest, and liquidated damages sought as of (i) the date of their Motion (Doc. 13) and (ii) the date they submit the supplemental brief.

Plaintiffs shall file this supplemental brief no later than **June 6, 2018**. Fioritto Construction may file an opposition brief providing any opposing evidence and calculations regarding Plaintiffs' damages no later than **June 20, 2018**. Plaintiffs will then have until **July 6, 2018,** to file a reply.

In the interim, the Court also encourages the parties to consider mediation to resolve the outstanding damages issues. If the parties wish to do so, they may contact Judge Smith's chambers to arrange for a mediation through the Court.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　*/s/ George C. Smith*
　　　　　　　　　　　　　　　　　　　**GEORGE C. SMITH, JUDGE**
　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**